746 P.2d 1032

STATE of Idaho,
Plaintiff–Appellant–Cross Respondent,

v.

Ferrell G. BARLOW,
Defendant–Respondent–Cross Appellant.

No. 1611

Court of Appeals o

Dec. 1, 1987.

Jim Jones, Atty. Gen., by Shad D. Priest (argued) Deputy Atty. Gen., Boise, for plaintiff-appellant-cross respondent.

Ronald J. Jarman, Pocatello, for defendant-respondent-cross appellant.

BURNETT, Judge.

This case presents issues relating to the use of summarized evidence and to the proper standard for determining when the presentation of misleading evidence requires a new trial. These issues arise from the prosecution of F.G. Barlow for violating state sales tax laws. At trial, the court admitted testimony relating to an audit. After a jury found Barlow guilty, the judge decided that the testimony had been misleading. He ordered a new trial. The state appealed from this order. Barlow cross-appealed, arguing that he did not willfully violate the sales tax laws and that the judge should have granted a motion for judgment of acquittal. For reasons explained below, we uphold the order denying Barlow's motion. However, we vacate the order granting a new trial and we remand the case for further findings.

The essential facts are these. Barlow operates a supply and contracting business in Pocatello. In 1984, Barlow sold two used furnaces to a customer who inquired about the sales tax. Barlow replied that he "didn't believe in it," but that if the customer desired to pay the tax himself, Barlow would give him the address of the State Tax Commission. The customer did so. The Tax Commission, alerted to Barlow's noncollection of sales tax, undertook an investigation. Employees of the Tax Commission made several purchases from Barlow. No tax was collected, nor were any taxable sales reported. Barlow ultimately was charged with multiple counts of failure to collect, failure to pay over, and failure to truthfully account for the state sales tax. See I.C. §§ 63–3075 and 63–3634.

At trial, Barlow took the stand in his own defense. He did not deny that, in fact, he had failed to collect, to pay over and to account for the retail sales tax. Rather, he contended that he had not "willfully" violated the law. He expressed the view he had complied with the statutes by paying sales tax on his wholesale purchases.[1] To rebut this testimony, the state called a Tax Commission employee who had audited Barlow's business records. Over objection, the employee testified that Barlow had failed to pay sales tax on purchases worth $16,500 in 1982. The defense then moved for a mistrial on the ground that the audit had been based on hearsay. After permitting defense counsel to conduct voir dire of the witness outside the presence of the jury, the trial judge denied the motion. Defense counsel did not cross-examine the witness when the jury returned.

The jury returned a verdict against Barlow on seven of ten counts. Barlow then moved for a new trial, contending both that the auditor's testimony was admitted erroneously and that it was misleading to the jury. At a hearing on the motion, a month after trial, defense counsel examined the auditor. During this examination, it was established that many of the wholesale pur-

---

1. At other junctures in these proceedings, Barlow has argued that he could not be convicted of willfully violating the statute because he believed in good faith that it was unconstitutional. The validity of this defense is discussed in Part IV, *infra*.

chases were of goods on which Barlow might not have been legally obligated to pay sales tax and which had not been purchased by Barlow for retail sale. The judge concluded that the auditor's trial testimony had been inaccurate and therefore misleading. He granted the motion for a new trial. This appeal and cross-appeal followed.

## I

We first address the state's appeal. We begin by discussing the admissibility of the auditor's testimony at trial. Barlow contends that the testimony was based on inadmissible hearsay sources, not identified by the state or readily available to the defense. The state argues that the testimony was properly admitted as a summary of voluminous underlying documents.

Our Supreme Court has long permitted the admission into evidence of testimony summarizing numerous documents which could not be presented conveniently to the trier of fact. As the Court explained in *State v. Clark*, 47 Idaho 750, 754, 278 P. 776, 778 (1929):

> Where there are records and numerous accounts consisting of many documents, books, entries, etc., a person properly qualified either as an expert or by reason of having made such accounts may testify as to the results of his examination.

*See also* I.C. § 9–411(5) (permitting use of summaries as evidence "[w]hen the original consists of numerous accounts or other documents which cannot be examined in court without great loss of time, and the evidence sought from them is only the general result of the whole"). This doctrine has been carried forward into the new Idaho Rules of Evidence. *See* I.R.E. 1006.[2]

▮ There are, of course, limitations on the presentation of summarized testimony. To facilitate meaningful cross-examination, the party planning to offer a summary should notify the opposing party, *see* I.R.E. 1006, and should make the underly-

ing documents available to him. *See Stolz v. Scott*, 28 Idaho 417, 154 P. 982 (1916) (accountant's report inadmissible where records on which it was based could not be located or accounted for); *State v. Clark, supra*. *See generally* G. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER, p. 371 (3d. ed. 1987). Furthermore, the party offering a summary must lay a foundation showing that the underlying documents would be admissible. *E.g. Phillips v. United States*, 201 F. 259 (8th Cir.1912); 5 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE ¶ 1006[03] (1983). Although there is no Idaho case law on the subject, we believe that the admissibility requirement is applicable in this state. Otherwise, a party would be able to bootstrap inadmissible hearsay into evidence by incorporating it into a summary. The drafters of I.R.E. 1006 arrived at the same conclusion. *Committee Report, supra* n. 2, at 1006–1. Finally, the trial judge should exclude the testimony if he believes that there is not a sufficient factual basis to support its admission. *Id.* To this end, the parties generally should be permitted to conduct voir dire of the witness outside the presence of the jury.

▮ Barlow further asserts that even the underlying documents in this case were inadmissible hearsay. However, the witness testified that the audit was based on checks and receipts produced to the Tax Commission by Barlow from his business records. The checks written by Barlow to his suppliers are party admissions. Under the Rules of Evidence they would be nonhearsay; under prior case law, they would be exceptions to the hearsay doctrine. *See Jolley v. Clay*, 103 Idaho 171, 646 P.2d 413 (1982) ; I.R.E. 801(d)(2)(A). The invoices provided to Barlow by his suppliers fall within the business records exception to the hearsay rule, having been prepared by the supplier and retained by Barlow in the regular course of business. *See Pettit v. State*, 161 Ind.App. 488, 316 N.E.2d 460

---

**2.** I.R.E. 1006 was not in effect at the time of the trial in this case. However, the Idaho rule and its federal counterpart recognize existing evidentiary practices, and they provide us with

useful guidance. *See* REPORT OF THE IDAHO STATE BAR EVIDENCE COMMITTEE, p. 1006-2 (December 13, 1983) (hereinafter cited as *Committee Report* ).

(1974); *Thomas v. Owens,* 28 Md.App. 442, 346 A.2d 662 (1975). As to accuracy, the witness testified that she personally prepared the audit based upon Barlow's own records. The trial judge was entitled to conclude that an audit prepared by a professional tax investigator would accurately summarize the documents on which it was based. Barlow made no showing at trial that the audit was inaccurate.

Barlow next contends that he received inadequate notice of the testimony to be presented, that he could not identify which portion of the lengthy audit would be discussed, and that he therefore was denied the right of effective cross-examination. However, the facts belie his contention. Although Barlow never made a formal discovery request, the state informed him that the auditor might be called as a witness regarding the results of the audit. The auditor testified that Barlow was given a copy of the audit when it was conducted. In any event, a copy of the audit was produced to the defense several weeks before trial. At trial, as mentioned above, counsel was allowed voir dire outside the presence of the jury. The witness identified the specific pages of the audit on which she relied. Although the checks and invoices on which the audit was based were not produced at trial, the witness testified that these documents had been returned to the defendant and that no copies had been retained. The relevant pages of the audit specifically identified the date, supplier, and check or invoice numbers of the documents. The defense made no claim that the documents had left Barlow's possession. (In fact, Barlow later offered one of the invoices as an exhibit at the hearing on his motion for a new trial.) Had the defense needed additional time to locate and to examine the documents, it could have requested a continuance or could have asked to reserve cross-examination until a later time. Instead, the defense simply declined to cross-examine. On these facts, Barlow's claim that his right to effective cross-examination was denied is without merit. We conclude that the admission of the testimony was not error.[3]

## II

The second issue raised by the state is whether the trial court erred in granting a new trial on the basis that the auditor's testimony was misleading. At trial, Barlow testified that he believed he had complied with the sales tax law by paying the tax on all purchases from his suppliers.[4] As noted, the auditor gave rebuttal testimony that Barlow had *not* paid tax to his suppliers on purchases worth $16,500 in 1982. The trial court allowed the defense another opportunity to cross-examine the auditor at a hearing on the motion for a new trial. At that hearing, it became apparent that the auditor's testimony was

---

**3.** The trial judge, while alluding to the business records exception, apparently based his decision on the grounds that the testimony was admitted to "impeach" Barlow's credibility. With regard to the invoices, we fail to see the significance of this observation. A witness's prior statements are sometimes nonhearsay because they are offered to show inconsistencies with his testimony at trial, rather than for the truth of the statements themselves. However, the invoices in this case were not statements by Barlow, and they reduced his credibility only to the extent that the jury believed the contents of the documents. Nevertheless, where a ruling of the trial court is correct, though made upon an applicable theory different from that employed on appeal, the ruling will be upheld.

**4.** A sales tax is not due where a retailer buys property for resale. *See* I.C. § 63-3609. However, contractors who purchase tangible personal property for use in constructing or improving real estate must pay tax on the materials purchased. In that event no sales tax is due on resale to the ultimate consumer. I.C. § 63-3609(a). Thus, when Barlow purchased products for retail sale, the purchase was not taxable but the retail sale was subject to sales tax. When Barlow purchased products for use in his contracting business, the materials were subject to tax at the time Barlow purchased them. Customers of Barlow's contracting business would not have been required to pay sales tax on these materials. Barlow contends that he paid taxes on all his purchases, whether destined for retail sale for or use in his contracting business, because his retail sales were small and this procedure was simpler. He asserts that he believed such a procedure would comply with the statute. It does not, as we make clear elsewhere in our opinion. As to retail resale items, the tax must be computed and collected against the retail price, not against the wholesale price paid by Barlow.

either inaccurate or incomplete. Specifically, the figure provided by the auditor may have included purchases exempt from sales tax altogether. For instance, the figure included purchases of gasoline which would be exempt if motor fuel tax had been paid on them or if they were used for certain purposes. *See* I.C. § 63–3622(c) and (d), as the statute existed at times pertinent to this case. Whether the gasoline was in fact subject to sales tax is not clear from the record. The reason the results of the audit are open to question is that the auditor presumed purchases to be taxable unless Barlow established that the contrary was true. *See* I.C. § 63–3622(bb).

The question is whether the trial judge considered and applied the appropriate test to determine whether a new trial was warranted. Historically, a trial court's consideration of a new trial motion was limited to the grounds stated in I.C. § 19–2406. However, Rule 34, I.C.R., now provides that a trial court may grant a new trial "if required in the interest of justice." The state argues for a restrictive interpretation of the Rule, suggesting that it expands the grounds for a new trial only where strict application of the statute would deny a defendant due process of law. However, our Supreme Court has held that Rule 34 is broader than the statute. *State v. Drapeau*, 97 Idaho 685, 691 n. 4, 551 P.2d 972, 978 n. 4 (1976) (interpreting identical language in predecessor rule); *State v. Palin*, 106 Idaho 70, 675 P.2d 49 (Ct.App.1983).

Here, a new trial was granted because the court determined that misleading evidence had been presented at trial. The state argues that the trial judge should not have declared that Barlow had been denied a fair trial; rather, the judge should have applied the test for newly discovered evidence laid out in *State v. Drapeau, supra.* In contrast, Barlow argues that application of the *Larrison* test, recently applied by the Idaho appellate courts in cases where witnesses recanted their testimony, would have been more appropriate. *See State v. Scroggins*, 110 Idaho 380, 716 P.2d 1152 (1985) *and State v. Lawrence*, 112 Idaho 149, 730 P.2d 1069 (Ct.App.1986), *applying Larrison v. United States*, 24 F.2d 82 (7th

Cir.1928). The principal difference between the two tests is that under *Drapeau*, a new trial should be granted if the newly discovered evidence would "probably produce an acquittal," while under *Larrison* a new trial is appropriate if, in the absence of the false testimony, the jury "might have reached a different conclusion." *State v. Lawrence, supra.* Other requirements found in both tests relate to the defendant's knowledge of the evidence at the time of trial and to his diligence in discovering and combatting it. The state urges that, under either test, the grant of a new trial was improper.

■ The *Larrison* test has been applied by courts where the trial judge is satisfied that a witness has given intentionally false testimony. *See, e.g., United States v. Anderson*, 509 F.2d 312 (D.C.Cir.1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975); *United States v. Meyers*, 484 F.2d 113 (3d Cir.1973); *see generally* 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL. § 557 (2d ed. 1982). As this Court explained in *Lawrence*, we require a less demanding demonstration of prejudicial impact in the *Larrison* context because "perjured testimony affects the integrity of the judicial process in a way that overlooked testimony does not." 112 Idaho at 151, 730 P.2d at 1071. One federal circuit has suggested that *Larrison* applies wherever testimony is later shown to be false, whether or not the falsity was intentional. *See United States v. Kaufmann*, 783 F.2d 708 (7th Cir.1986). However, we believe that such a rule would extend the *Larrison* standard beyond its policy underpinnings. If we were to apply the *Larrison* test in every case where subsequent evidence indicated that a witness inadvertently had given inaccurate testimony, the *Drapeau* rule would be swallowed by the *Larrison* exception.

Barlow suggests that the auditor's testimony constituted a deliberate falsehood. We are uncertain that the auditor's testimony was indeed false. Whether Barlow owed sales taxes on the purchases listed cannot be ascertained from the record before us. Nevertheless, the testimony was

incomplete because the auditor failed to reveal that the audit's conclusions were based upon a rebuttable presumption of taxability. However, the trial court did not believe that the incomplete testimony was the result of a deliberate effort to deceive the jury:

> And, again, I'm not saying anything wrong toward [the witness], and I appreciate you're a lay witness, you're called into court and you're asked questions, and if you're not asked other ones, perhaps you didn't answer them. And I'm not alluding or suggesting that you tried to play any tricks on anyone. I'm not suggesting that you did, Mr. [prosecutor].

Upon this record, we believe the *Drapeau* standard, rather than the *Larrison* test, is applicable.

■ Under *Drapeau*, a new trial motion should be granted if "(1) ... the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) ... the evidence is material, not merely cumulative or impeaching; (3) ... it will probably produce an acquittal; and (4) ... the failure to learn of the evidence was due to no lack of diligence on the part of the defendant." *State v. Drapeau,* 97 Idaho at 691, 551 P.2d at 978. The trial judge did not make the findings required by *Drapeau.* Rather, he simply concluded that the auditor's testimony was incorrect and that Barlow had been denied a fair trial. Although he did state that the testimony "had a substantial impact on the jury," the judge did not find that the new evidence was "material" and that its introduction at a new trial would "probably result in an acquittal." He also omitted to find that "the failure to learn of the evidence was due to no lack of diligence on the part of the defendant." The absence of such findings could be disregarded by an appellate court only where the record is clear and yields an obvious answer to the question. *Cf. Pope v. Intermountain Gas Co.,* 103 Idaho 217, 646 P.2d 988 (1982) (absence of findings in civil case). The record does not yield any obvi-

ous answers here. Accordingly, we vacate the trial judge's grant of a new trial and remand for further findings under *Drapeau.*

### III

On cross-appeal, Barlow urges that the trial court erred in denying his motion for judgment of acquittal at the close of the state's case-in-chief. Specifically, Barlow claims that the state failed to prove beyond a reasonable doubt that he "willfully" violated the sales tax statutes.[5] Of course, if the trial court eventually re-grants a new trial under the *Drapeau* standard, this issue will be relitigated. In that event, the trial judge will have to instruct the jury on "willfulness." Moreover, regardless of whether a new trial is granted, Barlow is constitutionally entitled to appellate review of his contention that the first trial should have resulted in a judgment of acquittal.

■ The trial judge instructed the jury as follows:

> An act is done willfully, if done voluntarily and intentionally with the purpose of avoiding a known legal duty. A good faith misunderstanding of the law may negate willfulness, but a good faith disagreement with the law does not.

On appeal, the parties urge different views of the meaning of "willfulness." The state argues that willfulness under the sales tax laws is defined in I.C. § 18–101:

> The word "willfully," when applied to the intent with which an act is done or omitted, implies simply a purpose to commit the act or make the omission referred to. It does not require any intent to violate [the] law, or to injure another, or to acquire any advantage.

The state contends, under this definition, that no question can be raised as to sufficiency of the evidence. However, we do not believe the state can urge such a rule of law at this late stage of the proceedings. Not only did the state fail to object to the court's instructions regarding willfulness, *see State v. Collinsworth,* 96 Idaho 910,

---

5. A similar argument recently was discussed by this Court in an income tax evasion case. *See*

*State v. Gilbert,* 112 Idaho 805, 736 P.2d 857 (Ct.App.1987).

539 P.2d 263 (1975), but the state proposed an instruction that "the defendant's conduct is not willful if you find that he failed to file a return ... due to his good faith misunderstanding of the requirements of the law...."

In any event, the state's position is not well taken. I.C. § 18–101 defines willfulness for the purposes of "this code." I.C. § 18–100(1) provides that "[t]his title is called the Criminal Code." Thus, I.C. § 18–101 defines willfulness for the purpose of title 18. It does not purport to define willfulness as used in title 63—the state tax code. Although there are no Idaho cases interpreting willfulness within the meaning of I.C. § 63–3075, this statute is modeled closely on federal statutes that have been carefully scrutinized. *See* 26 U.S.C. §§ 7201–7203. The United States Supreme Court, reasoning that Congress intended "to construct penalties that separate the purposeful tax violator from the well-meaning, but easily confused, mass of taxpayers," has defined willfulness for the purpose of the tax statutes as an "intentional violation of a known duty." *See United States v. Bishop*, 412 U.S. 346, 361, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973). *See also United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976). We find this analysis convincing.

■ Barlow invites our attention to Art. 7, § 5, of the Idaho Constitution, which proscribes double taxation. He asserts that the sales tax laws contravene this constitutional provision or, at least, that his good faith belief on this point negates any showing of willfulness.[6] However, the trial court's willfulness instruction, quoted above, was taken verbatim from instructions Barlow then proposed. We believe the instruction precludes a defense on the grounds that the defendant believed the statute to be unconstitutional. The federal authorities cited by Barlow in

support of the instruction so hold. *See United States v. Kraeger*, 711 F.2d 6 (2d Cir.1983) ("a good faith belief that a law [is] unconstitutional [is] no defense...."); *United States v. Erickson*, 676 F.2d 408 (10th Cir.), *cert. denied*, 459 U.S. 853, 103 S.Ct. 118, 74 L.Ed.2d 103 (1982) (same). This approach is sensible. The power to determine the constitutionality of statutes lies with the courts. A citizen who ignores known statutory obligations does so at his peril. Accordingly, we will review the evidence in light of the law delineated in the instructions given.

■ A motion for judgment of acquittal under I.C.R. 29 may be granted only "if the evidence is insufficient to sustain a conviction...." In our view, the test of sufficiency is whether there is substantial evidence upon which rational triers of fact could find guilt beyond a reasonable doubt. This is the same standard applied to appellate review of convictions. *State v. Elisondo*, 103 Idaho 69, 644 P.2d 992 (Ct.App. 1982). "When a motion for judgment of acquittal has been denied, and the defendant stands convicted, all reasonable inferences on appeal are taken in favor of the prosecution." *State v. O'Campo*, 103 Idaho 62, 67, 644 P.2d 985, 990 (Ct.App.1982).

■ In this case, there was ample evidence from which rational jurors could conclude beyond a reasonable doubt that Barlow intentionally violated a known legal duty. From 1965 until 1982, Barlow collected sales tax from his customers and remitted it, accompanied by the proper forms, to the Tax Commission. The evidence indicates that Barlow posted a sign in his store stating that "since the currency of the United States is not redeemable in gold and silver coins, and since the United States Constitution forbids states and municipalities from making anything but gold and silver coin a tender in payment of debts, YOU CANNOT BE REQUIRED TO

---

**6.** We deem it clear that the statute does not, in fact, impose double taxation. Barlow apparently believed that he could not be forced to charge his customers sales tax if he had himself paid sales tax on the purchase. However, as we mentioned at n. 4, *supra*, the sales tax law does not require Barlow to pay taxes on purchases made for retail sale. If Barlow purchased the item for use in his contracting business—and paid tax on the purchase—and he later decided to sell the item at retail, he would be required to charge sales tax only on the mark-up. *See* I.C. § 63–3613(a)(1).

PAY SALES TAX, and WE CANNOT BE REQUIRED TO COLLECT THEM FROM YOU." (Emphasis original.) As mentioned previously, a customer testified that when he asked Barlow about the sales tax, Barlow responded that he "didn't believe in it." Upon this record we hold that substantial evidence would support the jury's implicit finding that Barlow's failure to comply with the sales tax laws was willful.[7] The court did not err by denying the motion for a judgment of acquittal.

In summary, then, the judgment of conviction will stand, subject to ultimate disposition of Barlow's motion for a new trial. The case is remanded for the findings of fact required by *Drapeau.*

WALTERS, C.J., concurs.

HUNTLEY, Judge Pro Tem., concurring specially.

I concur fully in the opinion of Judge Burnett and write only with respect to the remand ordered in Part II. Although it is perhaps proper that we remand for the trial court to initially make the required *Drapeau* findings, such is a close call. From the record presented herein, it is rather clear that a new trial should not be granted because it is evident that *Drapeau* standards (1), (2) and (4) are not met and it is highly probable, in the face of the overwhelming evidence supporting the conviction, that standard (3) is not met.

---

7. We note further that although the issue has not been raised directly, Barlow's actions also would satisfy the requirement that he make some "positive attempt" to evade tax thus rendering him susceptible to prosecution for felony tax evasion under I.C. § 63–3075(b). *See State v. Gilbert, supra* n. 5, 112 Idaho at 811, 736 P.2d at 863.